UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-CIV-20938-JLK

NICOLAS ESTRELLA,

    Plaintiff,

vs.

FEDERAL INSURANCE COMPANY

    Defendants.

_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DEFENDANT'S AFFIRMATIVE DEFENSES NUMBERS ONE, THREE AND FOUR AS WELL AS THE DUPLICATIVE ALLEGATIONS IN DEFENDANT'S COUNTERCLAIM AS TO THE APPLICABILITY OF THE SPECIAL NO-CAPTAIN DEDUCTIBLE, AND IN ADDITION TO STAY PROSECUTION OF COUNT I IN DEFENDANT'S COUNTERCLAIM PENDING RESOLUTION OF THE PLAINTIFF'S CLAIM OF BREACH OF CONTRACT IN THE DIVERSITY CASE.**

COMES NOW the Plaintiff, NICOLAS ESTRELLA, by and through his undersigned counsel, and hereby files this Motion for Partial Summary Judgment on certain of the Defendant, FEDERAL INSURANCE COMPANY'S Affirmative Defenses, Defendant's duplicative allegations in Count II of its Counterclaim and to stay Count I of the Defendant's Counterclaim, and states:

**Motion and Memorandum of Law**

I.    **Summary of the Argument**

The relevant issue in this case involves the question of the recoverability of insurance proceeds under an All Risk Policy of Marine Insurance for the loss of a vessel that the Plaintiff, asserts was stolen from its dock near his home and later found in a partial sunken state in the Bahamas. The Defendant, challenges the Plaintiff's *prima facie* claim under the All Risk policy of

insurance alleging that the Plaintiff, or some related party, intentionally and deliberately took and then scuttled the vessel while at sea. Thus the issue of fact to be reached herein is what was the proximate cause of this loss under this All Risk policy of hull insurance: Theft by an unknown third party who thereafter tried to cover up the theft by disposing of the evidence; or the insured intentionally arranging for the disappearance and sinking of his own boat. (Please see Statement of Material Facts filed in conjunction with this Motion. (D.E. 163).

In his Complaint, filed on March 25, 2010 (D.E. 1), Plaintiff claimed breach of contract against FEDERAL INSURANCE COMPANY and alleged that his claim was brought under this Court's diversity jurisdiction and sought a jury trial to resolve the dispute. Defendant, while denying diversity jurisdiction exists, has admitted in its Answer (D.E. 7, para. 2) that the parties are citizens and residents of different states and that the claim or controversy is over a sum in excess of seventy five thousand dollars. Additionally, Defendant filed a Counterclaim under this Court's Admiralty jurisdiction seeking a declaration by this Court of the very same issues Defendant raised in its Affirmative Defenses Number 2 and Number 4 plead in opposition to the Plaintiff's breach of contract diversity claim.

Defendant, in its Affirmative Defense Number 1 (D.E. 7, p.3 ), denied this Court has any subject matter jurisdiction at all over Plaintiff's claims. In addition, in Affirmative Defense Number 3 (D.E. 7, p.7) , Defendant claims there is some non-existent maritime rule of law it designates as the "Admiralty Doctrine of Equipoise" that somehow switches the well-established burdens of proof in an All Risk insurance policy from the Defendant to prove an exclusion to coverage, to the Plaintiff to disprove Defendant's allegation that Plaintiff intentionally took his own boat and attempted to sink it. Lastly, in Affirmative Defense Number 4 (D.E. 7, p.7 ), Defendant claims that the stated

value of the hull insurance is somehow reduced by a special no-captain deductible (as the named Captain was not aboard) despite the lack of any proximate relationship between the issue of who was or was not the captain of this yacht in the past and the cause of this loss, whether by theft or intentional act of the insured.

For the reasons set forth below, Plaintiff is entitled to a Partial Summary Judgment that not only does this Court have subject matter jurisdiction, but that there is diversity jurisdiction, Florida law applies to the same under the *Erie* Doctrine, and the issues are properly to be decided by a jury trial. The Court should find that as the claims herein arise under an All Risk policy, there is no rule under Florida or even general maritime law that abrogates or switches Defendant's burden of proving that an exclusion to coverage prevents payment by it once the Plaintiff presents a *prima facie* case of loss under a valid contract of insurance. Further, the Court should find that there can be no reduction in the stated hull value amounts in the policy because of the alleged breach of a "No-Captain" warranty where there is no proof of any proximate causal connection between any such breach of warranty and the cause of the loss.

In addition, the Court should hold that Defendant may not vitiate Plaintiff's right to have these issues decided by a jury trial by filing a duplicative declaratory relief action claiming maritime law jurisdiction which raises the identical issues contained in Defendant's Answer and Affirmative Defenses in this diversity claim. As Count II in Defendant's Counterclaim (D.E. 8, pp.6-8) is the same issue raised in Affirmative Defense Number 4 in Defendant's Answer, the Court should similarly grant summary judgment to the Plaintiff on the lack of any causal connection between the loss and the alleged breach of warranty. Lastly, as Count I of the Counterclaim is identical to the issues to be decided by the jury as alleged in Affirmative Defense Number 2 in the diversity action,

the Court should stay prosecution of the Counterclaim pending the outcome of the jury trial as the Counterclaim will become moot at that point.

## II. The Law to be Applied in this Case

### A. Diversity Jurisdiction and Personal Jurisdiction exists

It is a well-established principle that "Federal Courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction" *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377(1994) (citations omitted). The basic statutory grants of Federal Court subject-matter jurisdiction are contained in 28 U.S.C. § 1331, which provides for "[f]ederal-question" jurisdiction, § 1332, which provides for "[d]iversity of citizenship" jurisdiction, and § 1333, which provides for Admiralty or maritime jurisdiction.

A plaintiff invokes 28 U.S.C. § 1332 jurisdiction when the plaintiff presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. See § 1332(a). To claim diverse citizenship as required under § 1332, Plaintiff properly plead that he is a citizen of Florida, living on Key Biscayne, Florida, and that the Defendant is a stock insurance company incorporated in Indiana with its principle place of business in New Jersey. D.E.1, para.2-3. Defendant, in its answer to the complaint, admitted the same facts. D.E. 7, para. 2. Thus, diversity of citizenship was established by the Plaintiff.

To show the matter in controversy has been satisfied, the Plaintiff properly plead that the Plaintiff and Defendant are parties to an insurance contract. D.E. 1, para. 37. The Defendant has admitted this fact. D.E. 7, para.12. The insurance policy in controversy involves an amount greater

than $75,000 (the full amount of the policy is $3,000,000.00). D.E. 1, para. 4. The Defendant, by admitting the policy existed, which was attached to the Complaint as Exhibit 1, by implication admits the amount in controversy, as the policy is a stated value policy of $3,000,000.00. Although Defendant might contest that it had a duty to pay that amount, such a defense goes to the merits of the claim, not the existence subject matter jurisdiction. Thus, the required amount of the matter in controversy has also been established by the Plaintiff as required by 28 U.S.C. §1332 and the Defendant's claim the Court lacks subject matter jurisdiction is totally without merit.

### B. Florida Law, not Federal or Maritime Law, Applies to the Policy Generally, and to the No-Captain Warranty Particularly.

The Defendant, by asserting that jurisdiction in this case is only proper in a Court in Admiralty is not only attempting to deprive the Plaintiff of his right to a jury, but is also attempting to characterize the issues of this case as falling solely under maritime law. While an insurance contract for a vessel can be maritime in nature (see for example, *New England Mut. Marine Ins. Co. v. Dunham*, 78 U.S. 1 (1870)), a breach of that contract is not necessarily only cognizable in Admiralty under Federal law. After *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310 (1955), which will be discussed in §II(B)(2) *infra*, it has been well established, that insurance contracts are creatures of State rather than Federal law and that Federal Courts apply State law in the interpretation of them unless governed by a particular Federal law or unique interest.

#### 1. The *Erie* Doctrine.

Following the Supreme Court's decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) and its progeny, district courts of the United States sitting in diversity follow a theoretically simple principle: Federal courts are to apply state substantive law and federal procedural law. See

*Id.* at 78(Reed, J., concurring); *Hanna v. Plumer*, 380 U.S. 460, 471-74 (1965). This basic *Erie* principle has since been further refined and interpreted by the Court in subsequent cases and in light of other Federal laws. Often collectively known as the "*Erie* Doctrine" at least three different basic texts, each of which contains a different standard, govern State and Federal choices of law: The Constitution of the United States, the Rules Enabling Act of 1934, 28 U.S.C. § 2072, and the Rules of Decision Act of 1789, 28 U.S.C. § 1652.

Though the Constitution is always in the background in diversity cases, it only applies to the displacement of state law by a federal rule of decision when the federal rule is an act of Congress. John Hart Ely, *The Irrepressible Myth of Erie*, 87 Harv. L. Rev.. 693, 700-06 (1974).  The Rules Enabling Act applies to all rules of decision promulgated thereunder, such as the Federal Rules of Civil Procedure. In cases involving a choice between the Rules of Civil Procedure and a state law, the Rules Enabling Act and cases construing it constitute the relevant standard. See e.g., *Hanna v. Plumer*; *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941).

The Rules of Decision Act applies when the federal rule of decision competing with a state law is wholly judge-made. The Act provides in relevant part:

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply. 28 U.S.C. § 1652.

Unlike constitutional and Rules of Enabling Act analyses, Rules of Decision Act analysis does not resort to notions of substance and procedure at all. This is because the purposes of the Rules of Decision Act, as interpreted by the Supreme Court, are to prevent the frustration of state substantive policy, and also to ensure the outcome of litigation in the forum will not materially differ

when it takes place in federal rather than state court. *Hanna*, 380 U.S. at 465-66; *Guaranty Trust Co. v. York*, 326 U.S. 99, 108-09(1945). Accordingly, the Rules of Decision Act applies to situations where state law must apply because the federal court is without authority to make law.

As the *Erie* Doctrine applies to allow Florida law to preempt Federal law where Federal law has no interest or conflict, as here, the only question remaining is whether anything else allows Federal law to preempt Florida Law as regards the warranties in maritime insurance contracts? The answer is decidedly no.

### 2. The *Wilburn Boat* Doctrine.

The Supreme Court's decision in *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310 (1955), established that though an insurance policy is a maritime contract, "it does not follow ...that every term in every maritime contract can only be controlled by some federally defined admiralty rule." *Wilburn* at 313. The Court based its ruling on the simple truth that insurance regulations are a complex matter even for Congress (*Wilburn* at 319) and that "[i]n the field of maritime contracts as in that of maritime torts, the National Government has left much regulatory power in the States." *Wilburn* at 313. The Supreme Court, while acknowledging the need for some uniformity in Maritime law, recognized the simple principle that the Federal Government need not be the final regulator of things the States are perfectly capable of regulating, and indeed have been for most aspects of insurance. See also *Ruhlin v. New York Life Ins. Co.*, 304 U.S. 202, 205 (1938) (a case contemporary with *Erie* stating that state law governs in the interpretation of insurance contracts); 2 Couch on Insurance § 24:44.

This District Court, in *Great Lakes Reinsurance (UK), PLC v. Rosin*, --- F.Supp.2d ----, 2010 WL 5397246 (S.D.Fla.,2010) acknowledged very recently that there is no Federal Admiralty interest

or conflict in a named Captain's clause (called a No-Captain warranty in this action) to justify refusal to apply Florida state law, noting that

> "[t]he *only* case purporting to recognize a federal rule voiding coverage for such a breach is an unpublished decision from a district court in *Alaska, Albany Ins. Co. v. Jones*, 1996 WL 904756, *4-*5, 1997 A.M.C. 1407, 1410 (D.Alaska 1996), and *a single district court case-given the 200 plus years of admiralty precedent this country-does not constitute established and entrenched federal precedent* for purposes of *Wilburn Boat* or the policy's choice of law clause." *Great Lakes Reinsurance* at 12 [emphasis added].

### 3. Florida Law.

Insurance is carefully regulated under Title XXXVII of the Florida Statues. These included Statutes, which contemplate application in a case like this, are quite clear that the breach of a warranty in an insurance policy does not void the policy *unless* the breach actually increased the hazard of loss:

> (2) A breach or violation by the insured of *any warranty, condition, or provision* of any wet marine or transportation insurance policy, contract of insurance, endorsement, or application therefor *does not void the policy* or contract, *or constitute a defense to a loss thereon*, unless such breach or violation increased the hazard by any means within the control of the insured. Florida Statutes § 627.409(2) [emphasis added]

See, for example, *Proprietors Ins. Co. v. Siegel* (410 So.2d 993 (Fla 3rd DCA 1982)), in which a yacht owner sought recovery of insurance proceeds after a yacht sank. The Circuit Court for Dade County entered summary judgment in favor of owner, and insurer appealed. The Florida Third District Court of Appeal held that the owner had sustained her burden of proving that loss arose from insured peril and insurer failed to show that Siegel's actions had increased the hazard to the vessel as required by Florida law.

The 11th Circuit, properly applying Florida law, stated, "[t]he statute is designed to prevent

the insurer from avoiding coverage on a technical omission playing no part in the loss." *Windward Traders, Ltd. v. Fred S. James & Co. of New York, Inc.* 855 F.2d 814, 817 (11th Cir. 1988) citing *Pickett v. Woods*, 404 So.2d 1152, 1153 (Fla.5th DCA.1981). In fact, the 11th Circuit in *Windward Traders* held that a violation of a notification requirement in a navigation limit warranty, did not constitute a breach of that warranty for the purpose of voiding the policy, noting that "failure to notify the underwriters obviously played no part in causing the loss." *Windward Traders* at 817.

Therefore, under *Wilburn* and cases from this District and Circuit, Florida law is clearly controlling regarding warranties in an insurance policy unless it can be shown that the warranty touches a Federal interest. Under Florida law, for a warranty to be used as a defense it must actually contribute to increasing the hazard toward the insured property and cannot merely be cited by an insurer to mitigate its losses when a breach did not create or affect the loss.

### D. The Policy is an All Risk Policy

The type of insurance policy at issue in this case is known as an "All Risk" policy, which is clearly stated in the policy as drafted by the Defendant: "This part of your Masterpiece Policy provides you with coverage against *all risk* of physical loss to your yacht *unless stated otherwise or an exclusion applies*." D.E. 1, Exhibit 1, Policy, p B-1 [emphasis added].

Florida courts construe "All Risk" policies like the one here to cover all losses or damages other than those resulting from wilful misconduct or fraudulent acts or which are otherwise expressly and plainly excluded from coverage in the policy itself. *Fayad v. Clarendon National Ins. Co.*, 899 So.2d 1082, 1086 (Fla.2005). In an All Risk policy, once an insured shows a loss occurred to its property while the policy was in force, the insurer has a contractual responsibility to properly pay the claim, or the burden shifts to the insurer to prove the loss arose from an excluded risk. See *West*

CASE NO.: 10-CIV-20938-JLK<br>Page 10

*Best v. Underwriters at Lloyds, London*, 655 So.2d 1213, 1214 (Fla. 4th DCA 1995); *Wallach v. Rosenberg*, 527 So.2d 1386, 1388 (Fla. 3d DCA 1988); *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So.2d 565, 568 (Fla. 2d DCA 1984) citing *Jewelers Mutual Ins. Co. v. Balogh*, 272 F.2d 889 (5th Cir.1959).

The only two pertinent exclusions are clearly noted in this policy as drafted by the Defendant (D.E. 1, Exhibit 1, Policy pp B-5, B-6):

> **Intentional acts.** We do not cover any loss caused intentionally by:
> - a covered person.
> - a person who lives with you; or
> - an employee of an entity named in the Coverage Summary.  But we do provide coverage for you or a family member who is not directly or indirectly responsible for causing the intentional loss.  An intentional act is one whose consequences could have been foreseen by a reasonable person.
>
> **Illegal acts**.  We do not cover any loss that arises from an illegal act by a covered person.  But we do provide coverage for you or a family member who is not directly involved in the illegal act.

Under the clear language of the policy, the Defendant, to prevail under an exclusion to coverage, must prove that the Plaintiff himself, a co-habitant, or an employee, proximately caused the loss of the vessel.  The Defendant cannot avoid this clear language in its own policy by re-characterizing it as shifting the burden of persuasion improperly to the Plaintiff, or by simply asserting that the loss perhaps non-fortuitous of itself, is therefore be presumed to be proximately caused by the Plaintiff.  Affirmative Defense Number 2 (D.E. 7, p.3) is the necessary opportunity for Defendant to prove that the theft claimed by the Plaintiff was proximately caused by Plaintiff himself, and was brought about by him intentionally.

### III.     **Plaintiff is entitled to Partial Summary Judgment on Defendant's Affirmative Defenses**

### One(1), Challenging this Court's Jurisdiction as Rightfully Pled by the Plaintiff, Three(3), As to the Application of Law, and Four(4), as to the No-Captain Warranty.

Under Florida law. "An affirmative defense is a defense, which admits the cause of action, but avoids liability, in whole or in part, by alleging an excuse, justification, or other matter negating or limiting liability." *St. Paul Mercury Insurance Company v. Coucher*, 837 So.2d 483, 483 (Fla. 5th DCA 2002). A simple denial is not an affirmative defense. See *Zito v. Washington Federal Savings & Loan Association of Miami Beach*, 318 So.2d 175, 175 (3d DCA 1975) ("... that portion of the affirmative defense alleging that the note was not in default does not constitute an affirmative defense, *but is merely a denial*") (emphasis added); also, *Gatt v. Keyes Corp.*, 446 So.2d 211, 212 (3d DCA 1984)("The matters raised by Gatt's affirmative defense *simply denied the facts* contained in the broker's complaint and did not raise any new matters to defeat the complaint.")[emphasis added].

"Certainty is required when pleading defenses and claims alike, *Zito v. Washington Federal Savings & Loan Association of Miami Beach*, 318 So.2d 175 (Fla. 3d DCA 1975), cert. denied, 330 So.2d 23 (Fla. 1976), and *pleading conclusions of law unsupported by allegations of ultimate fact is legally insufficient*." *Bliss v. Carmona*, 418 So.2d 1017, 1020 (3d DCA 1982)[emphasis added]. See also, *Dean v. Dean*, 665 So.2d 244, 251 (3d DCA 1995)(where "testimony offered ... was entirely conclusory [it] was therefore legally insufficient... bare accusation of [fact] could [not] establish [fact]").

A party can not simply state as fact the opposite of the pleading party as its affirmative defense and leave it at that. An Affirmative Defense must have some substantive allegation of fact that differs from, not merely opposes, the Plaintiff's claim.

    **A.**    **Affirmative Defense One: Jurisdiction of this Court**

As its First Affirmative Defense, Defendant asserts in a general manner that this Court lacks subject matter jurisdiction. D.E. 7, para. 1. The Plaintiff denies this assertion has any validity, but even if it were arguably true, the Defendant cannot rightfully contest that the basic factors for diversity jurisdiction under 28 U.S.C. sec. 1332 are applicable, as the Defendant Insurance Company admits in its Answer (D.E.7 ) to paragraphs 2, 3 and 8 of the Complaint that it was incorporated in Indiana, has its principle place of business in New Jersey, that the Plaintiff is a citizen Florida, a resident of Key Biscayne, Florida, and that the amount of the coverage in the policy at issue is far more than $75,000.

Yet, despite admitting the factors necessary for the Plaintiff to claim diversity jurisdiction, the Defendant inexplicably proceeds in its Counterclaim as if this action was never brought in diversity at all by Plaintiff and as if this Court *has* no diversity jurisdiction over it. The Defendant brought the First Count of its Counterclaim under this Court's Admiralty jurisdiction of 28 U.S.C. sec. 1333 and filed pursuant to F.R.C.P. Rule 9(h). The Defendant, citing this Court's jurisdiction in Admiralty, never mentions that the Plaintiff's original action was brought in diversity rather than in Admiralty, which allows the option of a jury trial for Plaintiff, which was properly demanded in his Complaint. D.E.1, p.10.

Furthermore, Defendant's First Affirmative Defense was not raised as a proper Affirmative Defense under Florida law, but was merely a denial of the Plaintiff's detailed claim that this Court has subject matter jurisdiction as an action properly raised in diversity. As a mere denial, lacking a more substantive assertion, it fails as an Affirmative Defense under Florida law. So, while the Plaintiff has quite clearly shown the basis of this Court's subject matter jurisdiction in its Complaint, and the Defendant has admitted *all* of the basic requirements to that jurisdiction under 28 U.S.C.

§1332, Defendant has failed to assert anything more substantive than to deny that jurisdiction exists, which is not sufficient under Florida law as cited above.

Therefore Defendant's First Affirmative Defense should be dismissed as contrary to the requirements of §1332, admitted by the Defendant, and insufficient as an affirmative defense under Florida law, and this Court should grant a Summary Judgment accordingly.

**B.     Affirmative Defense Three: The Application of Maritime Law**

As its Third Affirmative Defense, the Defendant asserts that Florida Law has no place in this action, and that it can only be prosecuted under federal Admiralty, or general maritime law. D.E. 7, p. 7.  Further, Defendant claims that the "Admiralty doctrine of equipoise" applies. Id.    First, Defendant's claim of Admiralty jurisdiction in its Third Affirmative Defense and its Counterclaim is merely an attempt to subvert the *Erie* and *Wilburn Boat* doctrines and side step the Plaintiff's right to this diversity action at law.  See §II(B)(1)-(3) *supra*.  Under the *Erie* Doctrine, Florida law would generally be controlling in a diversity action. As pertains to a marine insurance contract, under *Wilburn Boat*, Florida law would be applicable to the warranty clauses, as they have no basis in or conflict with Federal or Admiralty law.   As this District agreed in *Great Lakes Reinsurance* (See §II(B)(2) supra), under the *Erie* and *Wilburn Boat* doctrines, the No-Captain warranty of this policy must be determined under Florida law.

Second, by asking this Court to determine in a Declarative Action the same issue which is to be brought before the jury under the Plaintiff's diversity claim, the Defendant seeks to deprive the Plaintiff of the jury trial which he rightly claims.  As discussed in §II(A) *supra*, this action was properly plead by Plaintiff, as was his right, under 28 U.S.C. §1332 as a diversity action at law as a breach of contract claim.  A right to a jury trial is fundamental to our system of justice when legal

rights are to be determined.  *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564  (1990).  "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care"  *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959),(quoting *Dimick v. Schiedt*, 293 U.S. 474, 486(1935). The Plaintiff's right to a jury trial  would not be upheld if the action was tried under Admiralty jurisdiction, as the Defendant desires.  A Defendant cannot deprive a Plaintiff of that properly demanded right simply by asserting as an Affirmative Defense that the matter isn't one for the jury and filing a duplicative Declaratory Action in which there is no right to a jury on the same issues complained of by the Plaintiff.  In fact, even if Defendant had filed its Declaratory Action first, the Plaintiff would still be entitled to a trial by jury.  *Beacon Theatres* at 504.

Third, the first part of Defendant's Third Affirmative Defense is largely just a denial of the Plaintiff's statement of the case.  The Plaintiff has shown that Florida law properly applies to this case, so the Defendant's assertion  that  maritime law applies simply because the vessel is registered in the United States is a clear mischaracterization of law.  As it is offered by Defendant merely to refute the Plaintiff's assertion of loss through theft, the Defendant's claim that the loss of the vessel occurred in foreign waters, with no further sunbstantiation, is merely conclusory and is just a denial of Plaintiff's facts and is therefore not a proper Affirmative Defense under Florida law.  See *St. Paul Mercury Insurance Company v. Coucher*, 837 So.2d 483, 483 (Fla. 5th DCA 2002) (quoted above); *Zito v. Washington Federal Savings & Loan Association of Miami Beach*, 318 So.2d 175, 175 (3d DCA 1975) (quoted above); see also, *Gatt v. Keyes Corp.*, 446 So.2d 211, 212 (3d DCA 1984).

Finally, exhaustive research has confirmed Plaintiff's already well-held beliefs that there is

no "Admiralty doctrine of equipoise," so Defendant has no reason to cite one as the basis of an Affirmative Defense. This claimed doctrine flies in the face of well-established law applying to All Risk policies, as discussed in § II(C), supra.

Therefore, the Defendant's Third Affirmative Defense should be dismissed as a misstatement of applicable law; an improper attempt by Defendant to deprive the Plaintiff of his rightful jury trial; dismissed as contrary to the sufficiency of affirmative defenses under Florida law as being simply a denial; dismissed as citing non-existent "doctrine" as justification.

### C.     Affirmative Defense Four: The No-Captain Warranty.

Assuming, *arguendo*, that coverage is found to exist, the Defendant asserts that the No-Captain warranty and its special deductible reduces its contractual liability to pay the Plaintiff's rightful claim under the contract of insurance by imposing a large deductible. D.E.7, pp.7-8. However, the No-Captain warranty, while perhaps couched in terms of a deductible, is in fact a warranty since the insurer states it as an ongoing condition affecting coverage. The change in the deductible is only an *effect* of violation of the warranty and not a condition of itself.

Therefore, the important questions that must be answered are the choice of law to be applied to the warranty, and whether, even if violated, it serves to invoke the special No-Captain deductible under the circumstances of this case.

As discussed in detail in § II(B) *supra,* under the *Erie* and *Wilburn* Doctrines, and cases from this District and Circuit, Florida law, and in particular, Florida Statutes § 627.409(2) is clearly controlling as regards construing and applying marine insurance warranties in general, and a No-Captain warranty specifically, unless it can be shown by Defendant that a No- Captain warranty actually touches a Federal Admiralty interest.

Defendant cannot assert any Federal or Admiralty interest in a No-Captain warranty: There is absolutely no intrinsic Federal or Admiralty interest in ensuring that an insured vessel in Florida has a particular Captain, approved of by an insurance company. There is no Federal or Admiralty interest in ensuring that the Captain is, or is not, employed as a Captain on any other vessel; that insurance records regarding said Captain are maintained current by an insured; or that an insured must operate the vessel with the approved Captain in charge. In fact, for recreational vessels, there is no Federal requirement that a Captain, as separate from the vessel owner, be aboard *at all*, and no Federal Statute or regulation forbids any recreational vessel owner from operating his vessel at any time, with or without an employed captain, as separate from the owner. Defendant's own claims adjuster, Paul Richard, has stated that his understanding of the purpose for the No-Captain warranty is simply to ensure that vessels insured by Defendant always have an available captain in case the vessel needs to be moved out of harm's way in a hurricane, for example. Deposition of Paul Richard, p. 58-59, (See Statement of Material Facts, D.E. 163, Exhibit B.) This warranty is simply not a Federal issue at all, but one of an insurance company managing its exposure to risk.

Since the No-Captain warranty in the policy has no inherent connection to any Federal interest of the Admiralty Court, and since the mere fact that a policy of marine insurance is a Maritime contract does not, of itself, bring every warranty in it under a Court's Admiralty jurisdiction (*Wilburn*), whether a particular Captain is aboard is simply a matter of contract between the insurer and insured, to be enforced according to Florida law, with Florida law entirely controlling the construction and weight given to the No-Captain warranty.

As discussed in § II(B)(3) *supra*, as required under Florida Statutes § 627.409(2), for a breach of warranty to be used as a defense under Florida law, it must actually contribute to increasing

the hazard toward the insured property. The warranty cannot merely be cited by an insurer to mitigate its losses. The Defendant fails to meet this clear standard set by Florida law.

The Defendant simply claims, without legal support, that the mere fact that the last time the captain on file, James Matthysse, operated the vessel may have been August or September of 2008 is a prima facie violation of the warranty. No attempt has been made by Federal Insurance Company's corporate representatives to causally connect this alleged breach of warranty to the loss of the vessel no matter the manner of the loss, as required by Florida law. See Deposition of Paul Richards at pp.56-76, (D.E. 163 Statement of Facts, Exhibit B.)

Without a showing of how the theft occurred because Captain James Matthysse was not present, or how his absence increased the hazard to the vessel when there was no requirement that he live on board, the Defendant's reliance on the warranty cannot meet the requirements of Florida law and thus, the alleged breach of that warranty cannot reduce the amount of the policy benefits if Plaintiff prevails in his breach of contract action. Obviously, if Defendant prevails in its Affirmative Defense Number 2 this issue is moot.

It is important to remember the opposing theories of this case and their effect on the No-Captain warranty: The Plaintiff's asserts that the vessel was stolen by an unknown party or parties from its berth while moored, and the owner was fully deprived of his property with that theft. The Defendant claims that Plaintiff or his employee, purposely scuttled the vessel. If the owner prevails, it is irrelevant whether or not the policy has a No-Captain warranty, since theft is a covered loss under this All Risk Policy of insurance. If Defendant prevails, the insurance policy would obviously be uncollectable anyway, since the loss would be the result of an intentional act by the Plaintiff, or one of his employees.

CASE NO.: 10-CIV-20938-JLK
Page 18

In fact, by the parties' theories of this case, there is no situation whereby the No-Captain warranty has *any* effect because adherence to it, or violation of it, can not have increased the hazard to the vessel as required under Florida law, and nowhere in Defendant's corporate representative's deposition does he explain, or attempt to justify how the presence or absence of James Matthysse had any causal relationship with the loss or increased the hazard to the vessel. Therefore, the Plaintiff requests this Court to grant partial summary judgment as to the Defendant's Fourth Affirmative Defense, and find that the Captain's Clause is not applicable in this action, finding the matter contrary to Admiralty and Florida law, and completely irrelevant under any theory of loss advanced by either of the parties.

### IV. Count II of Counterclaim fails for the same reason asserted above as it is essentially duplicative of Defendant's Fourth Affirmative Defense

As discussed in § III(C) *supra*, the Defendant's Fourth Affirmative Defense asserts that the No-Captain warranty in the policy reduces its responsibility to fulfil its contractual obligations under the insurance policy. D.E. 7, pp.7-8. This Affirmative Defense fails under applicable Florida law as there is no showing by Defendant of a causal connection between the loss and the alleged breach of warranty, as required by Florida Statutes §627.409(2). Count II of Defendant's Counterclaim (D.E. 8, pp. 6-8) is duplicative of its Fourth Affirmative Defense and merely restates the same issue.

Under an All Risk policy, and applicable Florida law, it is Defendant's burden to prove the causal connection between the loss and the alleged breach of warranty. Defendant wholly fails to do so and the mere assertion that James Matthysse is no longer the captain of the vessel is insufficient under Florida law to sustain the breach of warranty defense.

Therefore, the Plaintiff respectfully requests this Court to dismiss the Count II of Defendant's

Counterclaim along with its Fourth Affirmative Defense as duplicative claims that clearly fail under applicable law.

**V. Count I of Counterclaim to the extent it mirrors Affirmative Defense Two should be stayed pending the Jury's determination of the issues raised in the breach of Contract claim.**

Count One of the Defendant's Counterclaim asks this Court to determine that the vessel that is the subject of the insurance policy at issue here was not stolen from its dock at the Plaintiff's residence, but was purposefully and fraudulently scuttled by the Plaintiff. D.E.8, pp.2-6. This is the identical claim asserted by Defendant as Affirmative Defense Number 2 in its Answer to Plaintiff's breach of contract claim.

This issue of how the loss occurred is the very heart of the case and Count I of Defendant's Counterclaim is simply a attempt by Defendant to have this Court preemptively determine a factual issue that is already properly before the jury in this diversity claim. The duplicative Count I of the Counterclaim should be stayed pending the jury's rightful determination of the cause of the loss and the responsibilities of the parties. If after the jury's verdict, there are still any issues pending in this regard, Defendant should address them only then, but the determination of the cause of the loss will already have been established, rendering moot the necessity for the Court to determine it again.

WHEREFORE, the Plaintiff in this Motion respectfully asks this Honorable Court for partial summary judgment on the Defendant's Affirmative Defenses Numbers One, Three and Four as well as the Duplicative Allegations in Count II of the Defendant's Counterclaim as to the applicability of the special No-Captain deductible. In addition, the Plaintiff respectfully asks this Court to stay Count I of Defendant's Counterclaim pending proper resolution of the Plaintiff's issues before the jury.

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was served via transmission of Notice of Electronic Filing generated by CM/ECF this  26  day of July, 2011, to: Christopher R. Fertig, Esq., Fertig & Gramling, 200 S.E. 13th Street, Ft. Lauderdale, FL 33316.

Respectfully submitted,

KARCHER, CANNING & KARCHER
Attorneys for Plaintiff
888 S.E. Third Avenue, Suite 300
Ft. Lauderdale, FL 33316
Telephone: 954/356-6999
Facsimile: 954/356-6889

By:  /s/ Michael R. Karcher
       MICHAEL R. KARCHER, ESQ.
       FLA. BAR NO. 516287
       E-mail: mrk@ukandk.com