IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-CV-20938-JLK

NICOLAS ESTRELLA,

Plaintiff,

v.

FEDERAL INSURANCE COMPANY,

Defendant.
_____/

### DEFENDANT FEDERAL INSURANCE COMPANY,'S MOTION FOR SUMMARY JUDGMENT

FEDERAL INSURANCE COMPANY, files this motion for summary judgment pursuant to the Rule 56 of the Federal Rules of Civil Procedure and would show as follows:

*Statement of the Case*

The instant action seeks a declaration of the Court with respect to a marine insurance policy (policy no.; 003705799) issued by FEDERAL INSURANCE COMPANY to NICOLAS ESTRELLA pertaining to an 85' Azimut M/Y Star One. (D.E.1) The plaintiff requested the Court to determine and declare the duties, rights and obligations under the policy for a loss sustained by ESTRELLA on May 3, 2009, The Plaintiff has also alleged causes of action for breach of contract as a result of Federal's failure to tender payment under the policy.

The Defendant, FEDERAL INSURANCE COMPANY, has filed a counterclaim for Declaratory Judgment seeking a declaration of the Court that there is no coverage under the policy for ESTRELLA's claim as the loss of the M/Y Star One was not the result of a fortuity. The counter claim also seeks a declaration of the Court as to the operation of the Captain on File Endorsement to the policy as well as the No Captain

Deductible. (D.E.8). This motion addresses only the fortuity issue as a finding of no fortuity would be dispositive of the entire issue.

*Summary of Argument*

To prevail in its action for declaratory judgment, the plaintiff must establish the occurrence of covered event under the policy issued by Federal. Plaintiff is unable to satisfy this burden under General Maritime Law, as the evidence establishes the vessel was scuttled. Scuttling is not a fortuity for which coverage is afforded. Nicolas Estrella failed in his burden to prove that a loss occurred and that it was due to some fortuitous event or circumstance. Nicolas Estrella fails in his burden to produce competent probative evidence of an accidental cause for the loss.

*Memorandum of Law*

A. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir. 1991).

As this Court held in *McNichols v. Miami-Dade County,* 2006 WL 1104336 *6 (S.D.Fla. 2006) "[s]ummary judgment is an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The factual issue presented to preclude a summary judgment must be more than speculative or theoretical. Moreover, there "must be more than a scintilla of evidence;

there must be 'substantial conflict in evidence to support a jury question.' *Tidewell v. Carter Prods*., 135 F.3d 1422, 1425 (11th Cir. 1998), quoting *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir. 1989). Ultimately, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.' *Allen v. Tyson Foods,* 121 F.3d at 646; accord *Denney v. City of Albany*, 247 F.3d 1172 at 1181 (11th Cir. 2001). *McNichols v. Miami-Dade County,* 2006 WL 1104336 *6 (S.D.Fla. 2006)

*B. Policy Interpretation*

Marine insurance policies are construed applying the general rules of contract law. "The first step in interpreting an insurance policy is to determine whether the policy terms are ambiguous." *Albany Ins. Co. through GRE Ins. Group v. Jones,* 1996 WL 904756, 3 (D.Alaska, 1996). Applying these principles, "a court must first examine the natural and plain meaning" of the contract language in construing the policy. *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n,* 117 F.3d 1328, 1337 (11th Cir. 1997), citing *Key v. Allstate Ins. Co.,* 90 F.3d 1546, 1548-49 (11th Cir. 1996). It is only when "the contract language is inconsistent, ambiguous, or otherwise not open to reasonable construction" that the court should interpret the contract. *Jacobs v. Nintendo of America, Inc*. 2003 WL 25738602, 2 (M.D.Fla. 2003) Under basic insurance contract interpretation principles, "where the policy language is clear and unambiguous, the Court must give effect to the plain language of the policy." *Twin City Fire Ins. Co. v. Fireman's Fund Ins. Co*., 386 F.Supp.2d 1272, 1276 (S.D.Fla. 2005)

Moreover, where the policy of insurance at issue is a marine policy, Federal rules regarding policy construction and interpretation must be applied. "State law cannot be utilized to interpret a warranty in a marine insurance contract if the federal judiciary has established a rule as to the interpretation of that type of warranty." *Aetna Ins. Co. v. Dudney,* 595 So.2d 238, 239 (Fla. 4th DCA 1992) citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), *La Reunion Francaise, S.A. v. Christy,* 122 F.Supp.2d 1325, 1334 (M.D.Fla. 1999).

**FORTUITY**

Marine insurance, such as the policy issued by Federal, "generally has three 'central conceptual elements:' (1)'it is a contract of indemnity against loss;' (2) 'the indemnity ... is only triggered by an accident or fortuity;' and (3) 'the 'adventure' or peril insured against must be specifically maritime in character.'" *Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.,* 518 F.3d 645, 654 (9th Cir. (Alaska) 2008). A fundamental requirement of every insurance policy, including marine insurance, is that a loss for which coverage is sought is the result of a fortuity.

This "most basic insurance law principles" is delineated in the opinion of Justice Lawson in *Nourachi v. First American Title Ins. Co.*, 44 So.3d 602, 609 -610 (Fla. 5th DCA 2010) citing to Appleman's text as follows:

> One of the fundamental assumptions deeply embedded in insurance law is the principle that an insurer will not pay for a loss unless the loss is "fortuitous," meaning that the loss must be accidental in some sense. The public policy underlying the fortuity requirement is so strong that if the insurance policy itself does not expressly require that the loss be accidental courts will imply such a requirement. The fortuity principle is often expressed with reference to certainty: losses that are certain to occur, or which have already occurred, are not fortuitous.

*Robert H. Jerry, II, Insurance Law's Fundamental Concepts and Assumptions,* in *New Appleman on Insurance* Law Library Edition § 1.05 (2010).

The justice stated that the "fortuity and known loss doctrines are 'integral to the nature of insurance and thus apply as a matter of public policy, irrespective of specific policy terms.' " *Nourachi at* 610 citing *HSB Group, Inc. v. SVB Underwriting, Ltd.*, 664 F.Supp.2d 158, 183 (D.Conn. 2009) (quoting *Nat'l Union Fire Ins. Co. v. Stroh Companies, Inc.*, 265 F.3d 97, 107 (2d Cir. 2001)).

The fortuitous loss requirement is applicable to marine insurance polices. See: *Standard Oil Co. of New Jersey v. U.S.* 340 U.S. 54, 59, 71 S.Ct. 135, 138 (U.S. 1950)

(Ordinary marine insurance covers losses due to fortuitous perils of the sea.) The fortuity rule applied by federal courts in marine insurance cases "provides that 'all-risk policies in marine insurance contracts only cover losses caused by fortuitous events'" *Markel American Ins. Co. v. Pajam Fishing Corp.,* 691 F.Supp.2d 260, 265 (D.Mass. 2010) citing *Youell v. Exxon Corp*., 48 F.3d 105, 110 (2d Cir. 1995), vacated on other grounds, *Exxon Corp. v. Youell,* 516 U.S. 801, 116 S.Ct. 43, 133 L.Ed.2d 9 (1995). *Northwestern Mut. Life Ins. Co. v. Linard* 498 F.2d 556, 561 (2nd Cir. 1974)(even an 'all risks' policy is subject to the proposition that the damage must have been due to some fortuitous circumstance or casualty.)    Coverage under a marine insurance policy "for accidental direct physical loss" is understood as coverage for a fortuitous loss. *Morrison Grain Co., Inc. v. Utica Mutual Ins*. Co., 632 F.2d 424, 431 (5th Cir. 1980). *St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc.* 2008 WL 4221635, 3 (S.D.Fla. 2008) affirmed in part, vacated in part, remanded by *St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc*., 561 F.3d 1181, 2009 A.M.C. 2794, 72 Fed.R.Serv.3d 1260, 21 Fla. L. Weekly Fed. C 1600 (11th Cir. (Fla.) 2009) (NO. 08-13398)

In the instant matter, the loss of the M/Y Star One was not fortuitous. It was a deliberate and intentional sinking of the vessel designed to financially benefit its owner Nicolas Estrella.  In May of 2009 the M/Y Star One was principally docked across the street from the Estrella residence in Key Biscayne, Florida.  Before sunrise on May 3, 2009, Robert Figueredo, a close family friend of Nicolas Estrella who had previously operated the M/Y Star One was dropped off with Eric MacKenzie at the dock where the insured yacht was located.  Removing the boat from her dock required special knowledge of her operation.  The M/Y Star One's engines had a peculiar starting procedure which required them to be started from a compartment behind the engine room rather than the helm station.  This peculiarity was known only to a small group of individuals familiar with the M/Y Star One, including Figueredo.  Despite the engines running at an early hour, no one in the Estrella household took notice.  In the darkness, the yacht was successfully navigated through minimally marked shoal waters that required local knowledge.

This was not the first attempt to scuttle the yacht. Figueredo and MacKenzie had previously taken the boat to Bimini, Bahamas several weeks prior on April 6, 2009.  This

unsuccessful scuttling attempt was aborted as a consequence of a generator fire that disabled both generators and ultimately the engines stopped operating due to a fuel starvation problem that required a $6,000 to $7,000 tow from the ocean to return to her berth. It is noteworthy that Estrella asserts that he did not give Figueredo permission to take the boat to the Bahamas in April 2009, just weeks before the scuttling of the M/Y Star One. In fact, Estrella said he never authorized Figueredo to use the boat. Despite the lack of authority and claimed lack of knowledge Estrella paid for the damage without demanding payment from Figueredo and without filing an insurance claim.

It was determined that the reason the engines stopped was the fact the yacht's day tanks, which fueled the engines, ran dry under Figueredo's command. The M/Y Star One had a complicated system for transferring fuel from the main tank to the day tanks which required particularized knowledge to operate the vessel. The vessel did not have sufficient cruising range to travel to the Tongue of the Ocean (where she was eventually scuttled) without replenishing the day tanks. Figueredo was shown how to fill the day tanks during repairs to the vessel which were completed on April 29, 2009. Without such specialized knowledge the boat could not have travelled under her own power to the location where she was discovered on May 3, 2009. A scuttler unfamiliar with the yacht's fuel system would have run out of fuel without reaching the Tongue of the Ocean as occurred during the first scuttling attempt by Mr. Figueredo.

During the repairs of late April 2009, the engines were fixed but the fire damaged port generator was not repaired. The port generator was cannibalized to get the starboard generator working just four days before the scuttling. The repairs were done this way because the mechanics performing the repairs were told the M/Y Star One was scheduled for a trip.

On May 3, 2009 the Star One was found capsized by the captain and crew or the M/V Esoteric south of Chub Cay, Bahamas with approximately 30 feet of its bottom and gunnel barely visible above the water. Salvors diving on the boat found clear and convincing evidence that the loss was not accidental; hatches were tied open, portholes were gaping and windows were broken. The yacht's sea chests had been opened, hoses were cut, an access plate was opened to the sea allowing water to flood the boat, and the two rigid inflatable tenders aboard the yacht had their floatation tubes intentionally cut

and deflated.  The engines were put into full reverse to cause water to enter into the yacht through the rear hatch.  The yacht was not abandoned due to engine problems as they were operating at the time they submerged.  The M/Y Star One showed no signs of forcible entry.  No one was found on board or in the immediate area of the vessel. Nothing of value was taken from the yacht.  The two tenders were tied to the M/Y Star One to assure they would disappear when the yacht sank beneath the waves.

The scuttlers did not use the yacht's tenders to escape.  It was necessary for a second boat to follow the M/Y Star One to her intended scuttling point to remove Figueredo and MacKenzie and return them to the Miami area.  Lorene Bariso, Figueredo's girlfriend at the time, picked up Figueredo and MacKenzie on the evening of May 3rd after they were dropped off by the escape boat.  Figueredo and MacKenzie had in their possession statues that were taken from the M/Y Star One.  This was a carefully planned and executed event, not an accident.

In May 2009, days after the vessel was found, Figueredo admitted to Lorene Bariso that he had been paid to sink the M/Y Star One.  Figueredo said the scuttling was performed so that an insurance claim could be made on the vessel. The sinking of the Star One was not an accident or a fortuity; it was an intentional act undertaken for the benefit of Nicolas Estrella.  As such it is not covered by the insurance policy issued by Federal.

The "general rule ... is that the burden is upon the insured to prove that a loss occurred and that it was due to some fortuitous event or circumstance." *Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.*  632 F.2d 424, 430-431 (5th Cir. 1980)[1] citing *Texas Eastern Transmission v. Marine-Office, Etc.,* 579 F.2d 561, 564 (10th Cir. 1978). Nicolas Estrella fails in this burden and is not entitled to a declaratory judgment establishing coverage under the policy issued by Federal. A maritime "loss is not considered fortuitous if it results from . . .the intentional misconduct of the insured" or those acting at his direction or on his behalf. *Axis Reinsurance Co. v. Henley,* 2009 WL 3416248, 15 (N.D.Fla. 2009).  Scuttling is not a fortuitous event.

---

[1] The decisions of the United States Court of Appeals for the Fifth Circuit as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit for this court, the district courts, and the bankruptcy courts in the Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

**SCUTTLING**

Estrella bears the burden of proof and persuasion in establishing to the court that a covered event has occurred in order to prevail. The insurer's obligation to establish an exception to coverage does not arise until plaintiff establishes a covered event. ('The plaintiff in a suit under an all-risks insurance policy must show a relevant loss in order to invoke the policy. Rather than being an exception to coverage, (it) is a predicate to the application of the policy.); See *Banco Nacional De Nicaragua v. Argonaut Insur. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982). Federal could stand mute and Estrella's case would fail because of his failure to establish a covered event. Notwithstanding the foregoing however, Federal has asserted, and the evidence establishes, that the M/Y Star One was scuttled. The scuttling of the M/Y Star One precludes coverage for its loss under the policy.

The scuttling of a vessel is not a fortuitous event. *Northwestern Mut. Life Ins. Co. v. Linard,* 498 F.2d 556, 561 (2nd Cir. 1974). Scuttling is the sinking of a vessel with the complicity, knowledge, consent, or participation of the owner. *Aetna Ins. Co. v. Hattersley* 1984 A.M.C. 2837, 2838 (D.Or. 1983) citing *Darien Bank v. Travelers Indemnity Co*., 654 F.2d 1015, 1019 (5th Cir. 1981) See also *Fishing Fleet, Inc. v. Trident Ins. Co., Ltd*., 598 F.2d 925, 927 (5th Cir. 1979). The evidence clearly establishes Robert Figueredo scuttled the M/Y Star One with the complicity, knowledge, consent, or participation of its owner, Nicolas Estrella. The record is void of any evidence establishing a motive or reason for anyone other than Estrella to sink the M/Y Star One. Nicolas Estrella had the only motive to sink the vessel and is the only one to benefit by its sinking.

Because of the nature of the action, the scuttling of a vessel and its owner's participation, knowledge, consent and complicity in its sinking is often proven through other than direct evidence. The Courts have consistently held however, that although evidence of scuttling may be circumstantial, it is adequate to demonstrate the vessel owner had the opportunity and motivation to employ a third party to scuttle the vessel. *Aetna Ins. Co. v. Hattersley* 1984 A.M.C. 2837, 2839 (D.Or. 1983). Such circumstantial evidence is typical of scuttling cases. *Steam Tanker Padre Island, Inc. v. London*

*Assurance, Guildhall Ins. Co.*, 1970 AMC 600 , 606 (S.D. Tex. 1970).  The presentation of such circumstantial evidence will shift to the insured the burden of persuading the court the vessel was not scuttled.

Factors which are to be taken into account with respect to the issue of scuttling include: (1) the circumstances of the sinking; (2) the communications among the owner, master and crew; and (3) the motives of owner and master. *Northwestern Mut. Life Ins. Co. v. Linard,* 498 F.2d 556, 559 (2nd Cir. 1974) citing *MacKinnon, J., in Lemos v. British & Foreign Marine Ins. Co.,* 39 Lloyd's List.L.Rep. 275, 283 (K.B.D.1931),

(*1*) *the circumstances of the sinking;*

The yacht was intentionally taken to a remote location, where she was the victim of a deliberate attempt to sink her and her tenders then abandoned as described in the section above.  Nothing of material value was removed from the yacht.

*(2) the communications among the owner, master and crew;*

Figueredo was a close personal friend of Estrella.  He has attended family birthday parties, weddings and holiday celebrations at the Estrella residence.  Estrella paid to repair the M/Y Star One after she was towed to port as a result of the damage sustained under Figueredo's command on April 6, 2009, without asking Figueredo to reimburse him.  This fact is most peculiar given the testimony of Estrella that he never gave Figueredo permission to use the boat. Figueredo continues to be family friends with Estrella, visiting his home and having dinner with Estrella after the fire and after the loss.

Figueredo was receiving money from Mr. Estrella at the time of the sinking although Mr. Figueredo was not employed by Estrella.  There was no justification given by Figueredo or Estrella for the money given to Figueredo.  Figueredo's girlfriend testified that Figueredo admitted he was paid to sink the M/Y Star One for the insurance proceeds.  In fact, Estrella has admitted under oath that he has contributed $10,000.00 for Figueredo's legal defense with respect to inquiries currently being made by law enforcement regarding Figueredo's involvement with the scuttling of the yacht.

Figueredo was one of a very limited number of individuals with knowledge of the peculiarities of starting the M/Y Star One, navigating her in the dark through the poorly marked shoals leading from Estrella's dock to open water, and the knowledge of how to transfer fuel from the main fuel tank to the day tanks.

*(3) the motives of owner and master.*

At the time of the scuttling Estrella was facing financial and liquidity problems.

Estrella was notified by Wachovia Bank in April 2009, just weeks prior to the scuttling, that the Bank would not renew his $20,000,000.00 credit line that was funding his business, Centrex Premium Finance Corp., and that $16,255,036.06 was due in June 2009. Estrella was also in default of a $2,000,000 personal guaranty of this line of credit. Estrella emptied his personal home equity line of credit by withdrawing $5,000,000 two weeks prior to the scuttling.

Estrella's personal income was significantly deteriorating in the two years prior to the loss. His income went from $4,483,588.00 in 2007 to $2,775,280.00 in 2008 to a *loss* of $317,887.00 in 2009, the year of the scuttling. Estrella was selling assets in 2009 to cover his expenses. In 2009 Estrella declared a loss on his income tax return.

Wachovia Bank, as a result of the default and the subsequent non-payment, obtained a court appointed receiver for Centrex. Estrella was illiquid at the time. Wachovia Bank filed a lawsuit against Estrella seeking to collect the outstanding balance in excess of $16,000,000.00. The lawsuit sought the entire amount from Estrella personally as he had committed fraud upon the bank.

The "vessel's being 'overinsured' is a factor properly taken into consideration by a court" as a motive for scuttling. *Northwestern Mut. Life Ins. Co. v. Linard* 498 F.2d 556, 559 (2nd Cir. 1974) citing *Compania Martiartu v. Royal Exchange Assurance Corp.*, (1924) A.C. 850, 852 (H.L.) (Lord Birkenhead) ('The loss of the vessel at that particular moment meant indeed the difference to the company between solvency and insolvency').

The M/Y Star One was insured for $3,000,000 on an agreed value basis. Her tenders were insured for an additional $33,500.00. Given the devastating market conditions caused by the down turn in the economy, the fair market value of the M/Y Star One at the time of the sinking was between $1,125,000 to $1,220,000.

The M/Y Star One had been unsuccessfully listed for sale for many years prior to the scuttling. After not selling, Mr. Estrella switched yacht brokers, the listing for sale was moved to Florida Yachts International in February 2008. At that time, the boat was listed for $2,700,000, which was $333,500 less than her insured value (assuming the vessel sold for her listing price and Mr. Estrella did not pay the broker a sales commission). In fact, the listing broker testified Estrella wanted to net $2,200,000 from the sale. The yacht, however, did not sell.

Within the four months prior to the scuttling, two contracts on the M/Y Star One failed to consummate according to David Berard, an independent yacht broker at HMY Yachts who was involved in proposed transactions involving the M/Y Star One. The M/Y Star One was insured for more than she was worth or could be sold for.

In order to determine why the yacht was not selling, a survey of the M/Y Star One was conducted on behalf of Estrella's listing agent on March 13, 2009, three weeks prior to the first scuttling attempt. Estrella's broker intended to use the survey to market the M/Y Star One. However, the survey established the fair market value of the boat to be $1,865,000 which was $835,000 below her list price and $1,148,500 below her insured value (yacht plus tenders).

The March 2009 survey found 72 deficiencies that required repair. The cost to correct the deficiencies was estimated to exceed $130,000. According to the yacht broker, no repairs were made to the yacht. No effort was made to correct the deficiencies. The vessel was not in condition to be sold and suffered from many costly defects that Estrella failed to correct. At the time of the scuttling, the port generator that suffered fire damage required an additional $30,000.00 to repair. The port generator was never repaired.

The boat served no purpose for Mr. Estrella. Estrella had lost interest in the M/Y Star One and had not used the vessel since the summer of 2008. He was illiquid, his prior years of high income had turned to into a loss, his business was also suffering losses, and his bank declared him and his company in default. The yacht was not selling and required in excess of $160,000.00 in repairs at the time she was scuttled. Given the fact the yacht was over insured by over 100% and Estrella required cash to satisfy his financial obligations, the motive for Estrella to scuttle the M/Y Star One is clear.

Just as over-insurance or inability to sell the boat can be considered as a motive to scuttle the boat, so too financial distress of the owner or his corporations are proper for consideration as to motivation to scuttle the vessel. *Fidelity & Cas. Co. of New York v. Hamill,* 1982 A.M.C. 2094, 2096 (S.D.Ala. 1982), *Elgi Holding, Inc. v. Insurance Company of No. America*, 511 F.2d 957, 959 (2nd Cir. 1975), cited with approval in *Cora Pub, Inc. v. Continental Cas. Co.*, 619 F.2d 482, 485 (5th Cir. 1980). Additionally business interests are "motivating circumstances to be considered". *Fidelity & Cas. Co. of New York v. Hamill, supra.*

Mr. Estrella's financial distress transcended the M/Y Star One. Wachovia Bank and the Court appointed Receiver for Centrex Premium Finance Corporation, a company wholly owned by Nicolas Estrella, determined that Estrella had drained the assets of Centrex for his own personal use and benefit through fraudulent transfers. These fraudulent transfers depleted the assets of Centrex to the point that the company could not continue as a going business concern without the intervention of the Receiver. Estrella has admitted in pleadings filed with the court in litigation between himself and Wachovia Bank to being illiquid at the time of the loss and that Centrex was not in compliance with net worth requirements as set forth in Fla. Stat. 627.828. Estrella needed cash; payment of the insurance proceeds for the loss of the vessel would have provided the cash infusion he required. This is ample motive for scuttling the boat.

Figueredo's motives to sink the boat are equally obvious. He was not only a close personal friend of Estrella, he was promised $100,000 to turn the yacht into a total loss.

There is an overabundance of evidence to support the motives of the owner and captain to sink the M/Y Star One. She was worth much more sitting on the bottom of the ocean than afloat. Afloat she was costly, depreciating and unsellable. Estrella required cash and the vessel's insurance was an available source.

The evidence of Estrella's financial distress, overinsurance of the yacht, loss of interest in the vessel and depreciated value of the vessel together with the inability to sell the M/Y Star One all support a finding by the Court that the vessel was scuttled and to defeat a finding of a fortuitous loss or coverage under the policy.

**EQUIPOISE**

Maritime law applies special concepts to address scuttling situations. Where the evidence that the vessel was scuttled outweighs the evidence the loss was caused by other than scuttling, then judgment is to be entered in favor of the underwriter that the loss is not covered as a scuttling is not fortuitous. However, even if the proof of scuttling is equal to the proof proffered by the owner that the vessel was not scuttled, judgment must still be entered in favor of the underwriter as the insured will have failed to carry its burden of persuasion and burden of proof in establishing the existence of a covered loss.

"The burden of proof, or rather, the risk of non-persuasion, is cast on the insured boat owner because he has more information more easily available to him than to the insurer. *Northwestern Mutual Life Insurance Co. v. Linard,* 498 F.2d 556, 562 (2nd Cir. 1974), citing *Compania Naviera Santi, S.A. v. Indemnity Marine Insurance Co. (The TROPAIOFOROS),* (1960) 2 *Lloyd's List* L.Rep. 469, 473 (Q.B.D.); *See,* F. Wigmore, *Evidence,* § 2486, at 275 (1940). If the probability that a vessel suffered a non-fortuitous loss, such as a scuttling, is equal to the probability that her loss was fortuitous, the evidence is in "equipoise" and the insured's case will fail. *Northwestern, supra,* 498 F.2d at 561, citing ( *The GLORIA* ), 54 Lloyd's List, L.Rep 35, 50-51 (A.B.D.1935) (Brandon, J.); *Aetna Insurance Company v. Hattersley, supra,* 1984 A.M.C. at 2839, *Reliance Ins. Co. v. McGrath,* 671 F.Supp. 669, 675 (N.D.Cal. 1987)

The burden of proof rests on the boat owner because he generally has more information readily available. Id. at 562; *Reliance Insur. Co. v. McGrath*, 671 F. Supp.

669, 675 (N.D. Cal. 1987). Even if the boat is salvaged so that the insurer can inspect it, the insured boat owner still will have more information available to him as to the events leading up to the sinking.

Of course, this risk of non-persuasion does not completely relieve the insurer of providing proof, because the insurer must still come forward with evidence that the probability of scuttling is at least as great as the probability that the loss was accidental. See *Linard*, 498 F.3d at 562. See also *Owens llinois, Inc. v. Aetna Casualty & Surety Co.*, 990 F.2d 865, 873 (6th Cir. 1993) (quoting *Inland Rivers Serv. Corp. v. Hartford Fire Insur. Co.*, 418 N.E.2d 1381, 1384 (Ohio 1981) (Celebrezze, C.J., dissenting)) ("It is a universal principle of insurance and maritime law that the insured has the burden of proving, by a preponderance of the evidence, that the damage to the vessel was caused by an insured risk. . . . Much like in baseball where 'a tie goes to the runner,' an insurance case in equilibrium 'goes to the insurer' when the insured fails to meets its burden of proof.").

This is true even where the action is styled as a declaratory judgment action maintained by the insurer and "even though the insurer is nominally the plaintiff." *Fireman's Fund Insurance Co. v. Videfreeze Corp.*, 540 F.2d 1171 (3rd Cir. 1976). *Ennia General Ins. Co. Ltd. v. V & W Seafood Enterprises,* 1987 A.M.C. 1488, 1492 (C.D. Cal. 1986). In the instant matter, Estrella has failed to satisfy its burden to persuade this court that the loss was the result of a fortuitous event or to rebut the evidence of scuttling.

Discovery in this action has failed to uncover evidence of any motive for anyone other than Estrella to sink the yacht.  There is no motive for any third party to take the M/Y Star One away from her dock, transport her over one hundred miles to a remote location in the Tongue of the Ocean, tie open hatches, cut hoses, break windows, open sea chests, and deflate tenders in order to sink the M/Y Star One in 6,000 feet of water and then to return to the Miami area on a separate escape boat.  Estrella testified that Figueredo had no independent motive to sink the M/Y Star One.  Estrella cannot and has not identified any person with a motive to sink the yacht.  Estrella had the most to benefit.  He is the only person with a motive.

## **CONCLUSION**

Estella's claim for coverage must fail as he has not established a fortuity. Estrella has not carried his burden of persuasion. The vessel was scuttled. Federal has presented clear and uncontroverted evidence that the M/Y Star One was the victim of an intentional effort to scuttle her. Federal has also presented clear and uncontroverted evidence that Estrella and his corporations were in financial distress at the time of the loss, giving Estrella a financial motive to scuttle the yacht. Simply put, the M/Y Star One was worth more to Estrella on the bottom of the ocean than she was worth floating. Estrella took advantage of an opportunity to liquidate an asset which he had been otherwise unable to convert to cash – he scuttled the M/Y Star One.

Conversely, Estrella has not offered or procured any evidence during the course of litigation that this scuttling occurred without his complicity, knowledge, consent, or participation. Judgment in this matter is not an issue of weighing evidence, but rather recognition of the complete absence of evidence presented by Estrella. Estrella has failed to present any evidence to show that the attempted scuttling of the M/Y Star One was without his complicity, knowledge, consent, or participation. Estrella has completely failed to meet his burden of persuasion. Trial in this matter would be a waste of judicial resources. 'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.' *Allen v. Tyson Foods,* 121 F.3d at 646; accord *Denney v. City of Albany*, 247 F.3d 1172 at 1181 (11th Cir. 2001). *McNichols v. Miami-Dade County,* 2006 WL 1104336 *6 (S.D.Fla. 2006)

Federal Insurance Company is entitled to a judgment as a matter of law.

**WHEREFORE**, Defendant Federal Insurance Company respectfully requests that this Court grant summary judgment in its favor and for any other relief this Court deems just and proper.

Respectfully submitted,

FERTIG & GRAMLING

Attorney for Defendant
Federal Insurance Company
200 SE 13th Street
Fort Lauderdale, FL 33316
Telephone: 954-763-5020
Facsimile: 954-763-5412


By: s/ *Christopher R. Fertig*
Christopher R. Fertig
Fla Bar No: 218421
chris.fertig@fertig.com

Darlene M Lidondici
Fla. Bar No.: 516521
dml@fertig.com

Seth E. Harris
Fla. Bar No.: 76217
she@fertig.com

`

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of July, 2011 this document was electronically filed with Clerk of the Court using CM/ECF. I also certify that on this day, the foregoing document is being served on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully Submitted,

s/ *Christopher R. Fertig*

CHRISTOPHER R. FERTIG (218421)
chris.fertig@fertig.com
DARLENE M. LIDONDICI (516521)
dml@fertig.com

Fertig & Gramling
200 Southeast 13th Street
Fort Lauderdale, FL 33316
Telephone:    954-763-5020
Facsimile:    954-763-5412
Attorneys for Federal Insurance Company

## SERVICE LIST

Christopher R. Fertig (Florida Bar #218421)
Seth E. Harris (florida Bar #076217)
Fertig & Gramling
200 Southeast 13th Street
Fort Lauderdale, FL 33316
Telephone:    954-763-5020
Facsimile:    954-763-5412
chris.fertig@fertig.com
seh@fertig.com
Attorneys for Federal Insurance Company

Michael R. Karcher (Florida Bar #516287
Karcher, Canning & Karcher
888 SE Third Avenue - #300
Fort Lauderdale, FL  33316
Telephone:  954-356-6999
Facsimile:    954-356-6889
mrk@ukandk.com
Attorneys for Nicolas Estrella